United States District Court
Middle District of Florida
Jacksonville Division

**MICHELLE ALFORD,**

 *Plaintiff,*

v.                  **NO. 3:17-CV-1200-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

# Order

 Michelle Alford brings this action under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying her request for a waiver of overpayments. Under review is a decision by the Appeals Council dated August 22, 2017. Tr. 132–40.[1] Alford contends the Appeals Council erred in applying a regulation defining when waiver is required and, alternatively, the regulation is entitled to no deference. Docs. 13, 22.

 A court reviews the Commissioner's factual findings for substantial evidence and the Commissioner's legal decisions de novo. *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1159 (11th Cir. 2018). A court reviews the Commissioner's statutory interpretation de novo, "albeit potentially subject to the principles of deference [applied] to an agency's statutory interpretation." *Id.*

 "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court is not required

---

[1]Citations to the transcript are to the supplemental transcript designated in the docket as document 18.

to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

The Social Security Act provides procedures for addressing overpayments to beneficiaries. *See* 42 U.S.C. § 404. The Act states that whenever the Commissioner finds that more "than the correct amount of payment has been made" to a beneficiary, "recovery shall be made" under "regulations prescribed by the Commissioner." 42 U.S.C. § 404(a)(1). Recognizing that recovery may create an undue hardship, the Act further states:

> (1) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or **would be against equity and good conscience**.
>
> (2) In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner … shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).42 U.S.C. § 404(b)(1), (2) (emphasis added).

42 U.S.C. § 404(b)(1), (2).

Pursuant to statutorily authorized power and authority,[2] the Social Security Administration ("SSA") promulgated regulations relating to overpayments, including this regulation on "equity and good conscience":

---

[2]Through the Social Security Act, Congress created the Social Security Administration and assigned it the duty to administer the old-age, survivors, and disability insurance programs. 42 U.S.C. § 901(a) & (b). Congress added that the Commissioner has the "full power and authority to make rules and regulations and to establish procedures, not inconsistent with [the statutes], which are necessary or appropriate to carry out such provisions" and must "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a).

2

(a) Recovery of an overpayment is against equity and good conscience … if an individual—

> (1) Changed his or her position for the worse (Example 1) or relinquished a valuable right (Example 2) because of reliance upon a notice that a payment would be made or because of the overpayment itself; or

> (2) Was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment (Examples 3 and 4).

(b) The individual's financial circumstances are not material to a finding of against equity and good conscience.

20 C.F.R. § 404.509(a) & (b).[3]

---

[3]The regulation includes four examples:

Example 1. A widow, having been awarded benefits for herself and daughter, entered her daughter in private school because the monthly benefits made this possible. After the widow and her daughter received payments for almost a year, the deceased worker was found to be not insured and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's private school expenses. Having entered the daughter in private school and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the payments would be against equity and good conscience.

Example 2. After being awarded old-age insurance benefits, an individual resigned from employment on the assumption he would receive regular monthly benefit payments. It was discovered 3 years later that (due to a Social Security Administration error) his award was erroneous because he did not have the required insured status. Due to his age, the individual was unable to get his job back and could not get any other employment. In this situation, recovery of the overpayments would be against equity and good conscience because the individual gave up a valuable right.

Example 3. M divorced K and married L. M died a few years later. When K files for benefits as a surviving divorced wife, she learns that L had been overpaid $3,200 on M's earnings record. Because K and L are both entitled to benefits on M's record of earnings and we could not recover the overpayment from L, we sought recovery from K. K was living in a separate household from L at the time of the overpayment and did not receive the

An overpaid beneficiary must show entitlement to waiver. *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011); *Harrison v. Heckler*, 746 F.2d 480, 481 (9th Cir. 1984); *Valente v. Sec'y of HHS*, 733 F.2d 1037, 1042 (2d Cir. 1984); *Romero v. Harris*, 675 F.2d 1100, 1104 (10th Cir. 1982); *Sierakowski v. Weinberger*, 504 F.2d 831, 835 (6th Cir. 1974); *cf. Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982) (holding claimant has burden to prove "without fault").

Alford's husband died in 2003. Tr. 121. She began receiving mother's benefits, and his three children began receiving child's benefits. Tr. 122, 136. At the time of Alford's application for benefits, she was unaware her late husband had a fourth child—KH—born before the marriage. Tr. 124, 128.

In 2003 or 2004, Alford—as an interested party—received notice that KH also claimed benefits. Tr. 122, 124. According to Alford, no one at the SSA told her she

---

> overpayment. K requests waiver of recovery of the $3,200 overpayment from benefits due her as a surviving divorced wife of M. In this situation, it would be against equity and good conscience to recover the overpayment from K.
>
> Example 4. G filed for and was awarded benefits. His daughter, T, also filed for student benefits on G's earnings record. Since T was an independent, full-time student living in another State, she filed for benefits on her own behalf. Later, after T received 12 monthly benefits, the school reported that T had been a full-time student only 2 months and had withdrawn from school. Since T was overpaid 10 monthly benefits, she was requested to return the overpayment to SSA. T did not return the overpayment and further attempts to collect the overpayment were unsuccessful. G was asked to repay the overpayment because he was receiving benefits on the same earnings record. G requested waiver. To support his waiver request G established that he was not at fault in causing the overpayment because he did not know that T was receiving benefits. Since G is without fault and, in addition, meets the requirements of not living in the same household at the time of the overpayment and did not receive the overpayment, it would be against equity and good conscience to recover the overpayment from G.

20 C.F.R. § 404.509.

4

could or should reduce her benefits during the pendency of KH's application. Tr. 124–25.

KH's application for benefits was denied, and Alford learned KH had been unsuccessful. Tr. 64, 123, 125–26. But KH appealed, and the Appeals Council issued a decision favorable to her in September 2010, finding she was entitled to benefits beginning in April 2003 based on a state court ruling rendered in 2006 that KH was the daughter of Alford's late husband. Tr. 137. That decision reduced the benefits payable to Alford beginning in October 2003. Tr. 137.

The month after KH's successful appeal, in October 2010, the SSA notified Alford she had been overpaid from October 2003 through December 2009. Tr. 114–16. Alford requested a waiver of recovery of the overpayments, which was denied. Tr. 76–77.

Alford requested and received a hearing before an administrative law judge ("ALJ"), at which she was represented by a lawyer. Tr. 74, 118–31. The ALJ found she had been overpaid $10,429 from October 2003 to December 2011 due to KH's entitlement and Alford was without fault in causing the overpayments but recovery would neither defeat the purposes of the Act nor offend equity and good conscience. Tr. 9–12.

Alford appealed. Tr. 38–40. The Appeals Council reviewed the case and rendered a partially favorable decision. Tr. 132–39. The Appeals Council found Alford was overpaid $7,602 in benefits due to KH's entitlement. Tr. 138. The Appeals Council agreed with and adopted the ALJ's finding that Alford was without fault in causing those overpayments. Tr. 138. The Appeals Council found recovery would not defeat the purpose of the Act because recovery would not reduce Alford's assets below $5600. Tr. 139. And the Appeals Council agreed with and adopted both the ALJ's

finding and the ALJ's rationale that recovery would not be against equity or good conscience.[4] Tr. 138–39. The adopted rationale was this:

> In the claimant's case, her position has changed for the better, not the worse. She also has not given up a valuable right by relying on the overpayment herself. At the time of her Request for Waiver, the claimant owned two houses, two cars and reported liquid assets in the form of available cash in her checking and savings accounts, totaling over $23,000. At the time of the request, her monthly income from her work was $3,933. By last report, her income from work activity has almost doubled that which she reported in November 2010.

Tr. 13.

Alford argues the Appeals Council, through adoption of the ALJ's rationale, erred in finding recovery would not be against equity and good conscience because the ALJ had considered her finances. Doc. 13 at 10–12 (citing *Tefera v. Colvin*, 61 F. Supp. 3d 207, 217 (D. Mass. 2014) (holding ALJ erred by finding recovery would not be against equity and good conscience because beneficiary possessed adequate earnings to repay overpayments)).

Alford's argument fails for two reasons. First, context shows the ALJ mentioned Alford's assets and income not as an independent consideration but to underscore the absence of evidence suggesting she had changed her position for the worse or relinquished a valuable right because of the overpayments. *See* Tr. 13. Second, even if the Appeals Council erred by considering Alford's assets, Alford shows no harm. She presents no argument—and the record contains no evidence to suggest—that her situation fits one of the three regulatory prerequisites for an against-equity-and-good-conscience finding (that she changed her position for the worse because of the overpayments, that she relinquished a valuable right because of

---

[4]Alford's children received overpayments, but those overpayments are not at issue. The ALJ issued three fully favorable decisions for Alford's children on the same date he entered the decision for Alford, resulting in waiver of recovery of overpayments to them. Doc. 13 at 3 n.2.

6

the overpayments, or that she had not received the overpayments). *See* 20 C.F.R. § 404.509(a).

Apparently recognizing the latter point, Alford observes that some courts have construed "in equity and good conscience" more broadly than the regulations and argues the same should be done here. Doc. 13 at 13–16. She mainly relies on *Groseclose v. Bowen*, 809 F.2d 502 (8th Cir. 1987), and *Quinlivan v. Sullivan*, 916 F.2d 524 (9th Cir. 1990). She argues the circumstances render recovery against equity and good conscience. Doc. 13 at 16–19.

If an agency's interpretation of a statute satisfies a certain threshold, a court must defer to it under *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which means the court must defer to the agency's reasonable interpretation of an ambiguous statute. *Martin*, 903 F.3d at 1159.

In *Groseclose*, the Secretary of Health and Human Services[5] withheld payments from a retiree's benefits to recovery overpayments to the retiree's child. 809 F.2d at 503. The Eighth Circuit held that the Secretary's interpretation of "equity and good conscience" in a previous regulation (limiting the phrase to only instances in which the beneficiary had relinquished valuable rights or had changed position for the worse in reliance on the overpayments and since changed to address *Groseclose*), was unreasonably narrow and did not reflect the common, ordinary meaning of the phrase or legislative intent. *Id.* at 506. The court held that recovery would be against equity and good conscience under the circumstances: the child lived out of state, the retiree lacked knowledge of her receipt of overpayments, and the retiree had neither made an incorrect statement nor failed to provide material information. *Id.* The court concluded, "Notwithstanding the deference given to administrative interpretations,

---

[5]Under the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the duties of the Secretary of Health and Human Services concerning social security were transferred to the Commissioner of Social Security.

7

… the Secretary's definition of [the phrase] is unreasonably narrow. It cannot be said that the relinquishment of a valuable right and the changing of one's position for the worse represent the only circumstances in which recoupment would be inequitable. We find it difficult to imagine a more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments." *Id.*

In *Quinlivan*, a beneficiary continued to receive benefits while in prison after the law was amended to prohibit payments to prisoners, but he had been unaware of the change in the law and without fault in receiving the overpayments. 916 F.2d at 525. Once he had learned of the overpayments, he wrote to the SSA, the SSA in turn demanded repayment, and efforts to resolve the matter failed. *Id.* He was released from prison, and he spent his savings, including the overpayments, on clothes, a used truck, and living expenses. *Id.* An ALJ found waiver unwarranted. *Id.* At the time, the beneficiary's sole source of income was $314 in monthly state welfare benefits. *Id.* Citing *Groseclose*, the Ninth Circuit held it was not bound by the regulatory definition of "in equity and good conscience" because the ordinary meaning of the phrase and the legislative history show Congress intended a broader meaning than the three current regulatory instances. *Id.* at 527. The court held recovery would offend equity and good conscience because the beneficiary "had no material goods, no means of transportation, and no income"; the beneficiary had worked only sporadically, apparently because of disability; and five years had passed since the beneficiary's reconsideration request, during which time he had had no prospect of steady income and his eligibility for general assistance had depended on his asset level, rendering unreasonable an expectation he hold funds. *Id.*

Whatever the merit of *Groseclose* and *Quinlivan*, they do not help Alford. While the Eighth and Ninth Circuits may have correctly concluded that Congress must have

8

intended waiver under the circumstances in those cases, the same does not hold true here.[6]

To support her argument that recovery would offend equity and good conscience, Alford asserts that the "equities weight heavily in favor of [her because she] was not at fault in any way in causing the overpayment[s]," pointing to the absence of advance notice and inability to know that she might be receiving more than she was due and emphasizing she never made an incorrect statement to the SSA regarding her receipt of benefits, never failed to provide requested information, and never accepted a payment knowing or suspecting it was incorrect.[7] Doc. 13 at 17–18.

---

[6]Besides *Groseclose* and *Quinlivan*, Alford relies on *Rini v. Harris*, 615 F.2d 625, 626 (5th Cir. 1980), and *Jefferson v. Bowen*, 794 F.2d 631 (11th Cir. 1986), claiming the Eleventh Circuit and former Fifth Circuit "generally take [a] traditional broad view of equity inconsistent with the regulation." Doc. 13 at 14; *see also* Doc. 13 at 18–19. In *Rini* and *Jefferson*, the court makes no mention of § 404.509 and provides no analysis on whether the court should defer to § 404.509. Accordingly, those cases cannot be read to hold that § 404.509 is owed no deference. In any event, the facts there are materially distinct from the facts here; those cases include equitable considerations—limited education and disability in *Rini*, 615 F.2d at 625, 627, and limited financial resources, education, and literacy in *Jefferson*, 794 F.2d at 633–34—while this case does not.

[7]Alford also points to statements made by the ALJ to support the finding Alford was not at fault: an overpayment may not have been created had the SSA reduced payments to Alford "in a timely fashion" when the SSA learned of KH; and Alford had "relied on erroneous information from an official source within the Social Security Administration about the interpretation of a pertinent provision of the Social Security Act or regulations." Tr. 12; *see* Doc. 13 at 16; Doc. 22 at 6. The statements do not help Alford because the ALJ's decision is not the final decision under review. The Appeals Council's decision is the final decision under review, and it includes no such statements or adoption of any such statements. (The Appeals Council adopted only the ALJ's finding Alford was not at fault and did not explicitly adopt its rationale with respect to this finding, unlike the against-equity-and-good-conscience finding. *See* Tr. 138.)

In any event, no delay is apparent given that the SSA notified Alford of the overpayment within a month of KH's successful appeal. Tr. 114–16. Moreover, Alford claims no prejudice caused by any delay—something that would be required under either the regulation (change of position for the worse or relinquishment of a valuable right) or ordinary notions of equity (as embodied in the equitable defense of laches). And the only suggestion of an erroneous statement appears to have been true at the time made (before KH successfully appealed)—that KH was ineligible for benefits. *See* Tr. 10, 125–26.

9

Alford improperly equates "without fault" to "against equity and good conscience." An overpaid beneficiary does not get to the latter waiver prerequisite without satisfying the former waiver prerequisite, making every waiver recipient without fault. As another court convincingly explained, "The Social Security Act explicitly distinguishes between these two showings, specifying that there shall be no recovery of an overpayment 'from[ ] any person who is without fault *if* such adjustment or recovery ... would be against equity and good conscience.' Accordingly, merely being without fault pursuant to § 404(b) does not render recovery of the overpayment against equity and good conscience." *Rodysill v. Colvin*, 745 F.3d 947, 952 (8th Cir. 2014) (quoting 42 U.S.C. § 404(b) and adding emphasis); *accord Quinlivan*, 916 F.2d at 527 ("[O]ur interpretation of the equity and good conscience standard does not mean that whenever an individual is found to be without fault, it necessarily follows that waiver is appropriate. This approach would render superfluous the 'without fault' provision, a threshold requirement of the statute."). Unlike in *Groseclose* and *Quinlivan*, it cannot be reasonably said that Congress must have intended waiver under the circumstances presented—here, where the overpaid beneficiary was without fault for a variety of reasons but no extenuating circumstances are present. Were that so, Congress would have stopped the statutory language at "without fault."[8] *See* 42 U.S.C. § 404(b) (quoted).

---

The Court does not read Alford's briefs to suggest the amount of the overpayments—$7,602—should be considered in deciding whether recovery offends equity and good conscience. *See generally* Docs. 13, 22. In any event, whether the amount is large is relative to a claimant's assets and already considered elsewhere in deciding whether recovery would defeat the purpose of the Act. *See* 42 U.S.C. § 404(b)(1); 20 C.F.R. § 404.508; *cf. Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise").

[8]To the extent any case cited by Alford suggests that the absence of fault alone supports an against-equity-and-good-conscience finding, the case cannot be reconciled with the statutory language separating the prerequisites or involves different circumstances.

10

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Michelle Alford and close the file.

**Entered** in Jacksonville, Florida, on September 27, 2019.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record